LAW OFFICES OF WILLIAM L. BAKER
William L. Baker (State Bar #114454)
1050 Fulton Avenue, Suite 218
Sacramento, CA 95825
Telephone: (916) 978-0772
Facsimile: (916) 481-5080
bill@wlbakerlaw.com

Attorney for Use Plaintiff
CAPITOL BUILDERS HARDWARE, INC.
dba CAPITOL DOOR SERVICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, for the use of CAPITOL BUILDERS HARDWARE, INC. dba CAPITOL DOOR SERVICE,<br><br>Use Plaintiff,<br>v.<br><br>SABER CONSTRUCTION, INC., a California corporation; AMERICAN SAFETY CASUALTY INSURANCE COMPANY, a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>• **ACTION ON MILLER ACT PAYMENT BOND**<br>• **BREACH OF WRITTEN CONTRACT**<br>• **QUANTUM MERUIT** |

Use Plaintiff complains and alleges as follows:

### JURISDICTION

1. The court has federal question jurisdiction under 15 U.S.C. §2310 as well as supplemental jurisdiction over Use Plaintiff's state law claims under Title 28 U.S.C. §1367.

### PARTIES

2. Use Plaintiff CAPITOL BUILDERS HARDWARE, INC. is doing business as CAPITOL DOOR SERVICE with its principal place of business located in Sacramento,

California. Use Plaintiff has complied with all of the fictitious name requirements and filings. At all times relevant herein, Use Plaintiff was a contractor licensed in the State of California.

3.  Defendant SABER CONSTRUCTION, INC. is a California corporation doing business in the State of California with its principal place of business located in Sanger, California.

4.  Defendant AMERICAN SAFETY CASUALTY INSURANCE COMPANY is a Delaware corporation and authorized to transact business as surety upon bonds and undertakings in the State of California.

### FIRST CLAIM FOR RELIEF
**(Action on Miller Act Payment Bond as Against All Defendants)**

5.  Use Plaintiff incorporates herein by reference each of the allegations set forth above.

6.  On a date presently unknown to Use Plaintiff, Defendant SABER CONSTRUCTION, INC. was awarded a contract by the United States of America, through the General Services Administration more particularly identified and known as Contract No. GS-09P-13-WB-M-0024 for that certain work of improvement consisting of improvements to the Robert F. Peckham Federal Building and U.S. Courthouse located at 280 South First Street, San Jose, California [hereinafter "Project"].

7.  On July 2, 2013, Defendant SABER CONSTRUCTION, INC. as principal and Defendant AMERICAN SAFETY CASUALTY INSURANCE COMPANY, as surety, executed and delivered a certain payment bond in the penal sum of $86,675.00 guaranteeing the payment to all persons supplying labor and materials in the prosecution of the work provided for in said Contract No. GS-09P-13-WB-M-0024 and any and all duly authorized modifications thereof, which said bond was executed and delivered as aforesaid in accordance with the provisions of an act of the legislature of the United States of America, dated August 24, 1935, 49 Stat. 793, as

amended (40 U.S.C. §§3131-3133), and a true copy of said payment bond is attached hereto and made a part of this Complaint and marked as Exhibit A.

8. During the course of the performance and prosecution of said public work, and under and by virtue of said contract between said Defendant SABER CONSTRUCTION, INC. and the United States of America, and between the dates of January 31, 2014 and March 17, 2014, Use Plaintiff furnished labor and materials consisting of automatic door equipment and related labor and materials to said contractor, Defendant SABER CONSTRUCTION, INC. at its request, which said labor and materials were furnished to be used in the prosecution of the work provided for in Contract No. GS-09P-13-WB-M-0024.

9. Said labor and materials were furnished by Use Plaintiff in the prosecution of said work as aforesaid, were and reasonably are worth the sum of $66,087.00; and there has been credited and paid on said account the sum of $6,608.70 and there is now due, owing and unpaid to Use Plaintiff the sum of $59,478.30 after deducting all just credits and offsets, and the same has not been paid, neither the whole nor any part thereof.

10. Use Plaintiff entered into a subcontract agreement with Defendant SABER CONSTRUCTION, INC. dated September 16, 2013. Attached hereto as Exhibit B is a true and correct copy of the Subcontract Agreement. Among other things, the subcontract agreement allows the prevailing party to recover attorney fees and costs in connection with any dispute arising out of the subcontract agreement. Use Plaintiff has incurred, and will continue to incur attorney fees and costs in pursuing recovery of amounts due and owing, and request, as a part of any judgment, recovery or all attorney fees and costs incurred in connection with pursuing this action.

WHEREFORE, Use Plaintiff prays for judgment as hereinafter set forth.

**SECOND CLAIM FOR RELIEF**
(Breach of Written Contract Against Defendant Saber Construction, Inc.)

11. Use Plaintiff entered into a subcontract agreement with Defendant SABER CONSTRUCTION, INC. dated September 16, 2013, wherein Use Plaintiff agreed to furnish and install automatic doors and related labor and equipment in connection with the Project. The original contract required Defendant SABER CONSTRUCTIPON, INC. to pay Use Plaintiff the sum of $66,087.00. Attached hereto as Exhibit B is a true and correct copy of the subcontract agreement.

12. Pursuant to this contract, Use Plaintiff provided labor, services and materials for the Project in question and did so pursuant to the terms of the subcontract agreement. The labor, services and materials were actually used in the work of improvement.

13. The whole of the real property described in the first cause of action upon which the work of improvement is situated is required for the convenient use and occupation of the work of improvement.

14. Although demand therefore has been made since the equipment, services, materials and labor were furnished as alleged above, Defendant SABER CONSTRUCTION, INC. has only paid a portion of the contract in the amount of $6,608.70. Defendant SABER CONSTRUCTION, INC. breached said agreement by failing to pay the present amount due and owing. Use Plaintiff is currently owed $59,478.30.

WHEREFORE, Use Plaintiff prays for judgment as hereinafter set forth.

**THIRD CLAIM FOR RELIEF**
(Quantum Meruit as Against Saber Construction, Inc.)

15. Use Plaintiff refers to and incorporates herein by reference the allegations of the first and second claims for relief.

16. At the special instance and request of Defendant SABER CONSTRUCTION, INC., and on a promise to pay the reasonable value thereof, Use Plaintiff herein provided labor,

services and materials for the Robert F. Peckham Federal Building and U.S. Courthouse located in San Jose, California, as more particularly described in the first claim for relief.

17. The furnishing of labor, services and materials for the above work of improvement were of the reasonable worth and value of $66,087.00.

18. Such materials, services and labor were furnished, and actually used in connection with the Project.

19. Although demand has been made on Defendant, only a portion of the above amount has been paid, and the amount of $59,478.30 remains due, owing and unpaid.

## PRAYER FOR RELIEF

WHEREFORE, Use Plaintiff prays for judgment against Defendants SABER CONSTRUCTION, INC. and AMERICAN SAFETY CASUALTY INSURANCE COMPANY as hereinafter set forth:

1. On the first claim for relief, for judgment against SABER CONSTRUCTION, INC. and AMERICAN SAFETY CASUALTY INSURANCE COMPANY, jointly and severally, for the sum of $59,478.30 together with interest at the legal rate allowed by law, as well as attorney fees and costs as provided in the subcontract agreement;

2. On the second and third claims for relief, judgment against Defendant SABER CONSTRUCTION, INC. in the sum of $59,478.30 together with interest at the legal rate allowed by law, as well as attorney fees and costs incurred;

3. For Use Plaintiff's cost of suit, including attorney fees incurred herein, and;

4. For such other and further relief as the court deems just and proper under the circumstances.

Dated: June 17, 2014              LAW OFFICES OF WILLIAM L. BAKER

By: _____
WILLIAM L. BAKER
State Bar No. 114454
Attorney for Use Plaintiff CAPITOL
BUILDERS HARDWARE, INC. dba
CAPITOL DOOR SERVICE

Bond Number: 10001479

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) 07/02/2013 | OMB No.:9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| Saber Construction Inc.<br>13323 E. Saginaw Way<br>Sanger, CA 93657 | ☐ INDIVIDUAL     ☐ PARTNERSHIP<br>☐ JOINT VENTURE  ☒ CORPORATION<br>STATE OF INCORPORATION<br>California |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND |||| 
|---|---|---|---|---|
| American Safety Casualty Insurance Company<br>23901 Calabasas Road, suite 1085<br>Calabasas, CA 91302 | MILLION(S) | THOUSAND(S) -86 | HUNDRED(S) 675 | CENTS 00 |
| | CONTRACT DATE 06/14/2013 | CONTRACT NO. GS-09P-13-WB-M-0024 |||

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL |||||
|---|---|---|---|---|
| SIGNATURE(S) | 1. /s/ Anthony Encinas (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Anthony Encinas, President | 2. | 3. | |

| INDIVIDUAL SURETY(IES) ||||
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) ||
| NAME(S) (Typed) | 1. | 2. ||

| CORPORATE SURETY(IES) ||||||
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | American Safety Casualty Insurance Company | STATE OF INC. Oklahoma | LIABILITY LIMIT $ 7,319,000.00 | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Anthony F. Angelicola, attorney-in-fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)

**EXHIBIT A**

Bond Number: 10001479

| | | CORPORATE SURETY(IES) *(Continued)* | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.



Number 10001479

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that American Safety Casualty Insurance Company has made, constituted and appointed, and by these presents does make, constitute and appoints

**Anthony F. Angelicola, SAN FRANCISCO, CA**

its true and lawful attorney-in-fact, for it and its name, place, and stead to execute on behalf of the said Company, as surety, bonds, undertaking and contracts of suretyship to be given to

**ALL OBLIGEES**

provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount the sum of

**Eighty Six Thousand Six Hundred Seventy Five Dollars ($86,675.00)**

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of the Company of the 25th day of April, 2012.

RESOLVED, that the President in conjunction with the Secretary or any Assistant Secretary may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the Company, to execute and deliver and affix the seal of the Company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any power of attorney previously granted to such persons.

RESOLVED FURTHER, that any bond, undertaking, recognizance, or suretyship obligation shall be valid and binding upon the Company: (i) when signed by the President or any Vice-President and attested and sealed (if a seal is required) by any Secretary or Assistant Secretary or (ii) when signed by the President or any Vice-President or Secretary or Assistant Secretary, and counter-signed and sealed (if a seal is required) by a duly authorized attorney-in-fact or agent; or (iii) when duly executed and sealed (if a seal is required) by one or more attorney-in-fact or agents pursuant to and within the limits of the authority evidenced by the power of attorney issued by the Company to such person or persons.

RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any power of attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effects as though manually affixed.

IN WITNESS WHEREOF, American Safety Casualty Insurance Company has caused its official seal to be hereunto affixed, and these presents to be signed by its President and attested by its Secretary this 25th day of April, 2012.

Attest:

Ambuj Jain

Joseph D. Scollo, Jr.

**STATE OF GEORGIA**

**COUNTY OF COBB**

On this 25th day of April, 2012, before me personally came Joseph D. Scollo, Jr., to me known, who, being by me duly sworn, did depose and say that he is the President of American Safety Casualty Insurance Company, the corporation described in and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that is was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

Benton Lee Jehress, Notary Public

I, the undersigned, Secretary of American Safety Casualty Insurance Company, an Oklahoma corporation, DO HEREBY CERTIFY, that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney, is now in force.

Signed and sealed in the City of Atlanta, in the State of Georgia

Dated this 2nd day of July, 2013

Ambuj Jain

# SUBCONTRACT AGREEMENT    F I L E

MADE THIS DAY, ___09-16-2013___, by and between **SABER CONSTRUCTION INC.**, whose business address is P.O. Box 8641, Fresno, California, 93747, whose license number is 655394 B, hereinafter called "Contractor,"

and ___Capitol Door___ herein after called "Subcontractor"

Address: ___5860 Adler Ave___

City: ___Sacramento___

Lic. No.: _969762_  Tax I.D. No. _94-159-1017_

Project: ___Install front H/C glass doors___

Project address: _280 S. First Street_

Architect/Engineer: ___N/A___

Owner: ___GSA___

Whereas Contractor has entered into a contract hereinafter called the "Prime Contract" with the Owner to construct the above noted project pursuant to the plans and specifications prepared by the above noted Architect/Engineer

And,

WHEREAS, Subcontractor desires to perform certain items or portions of the work specified in the Prime Contract and Contractor is willing to sublet such work to Subcontractor at the price or prices stated herein and upon the terms and conditions set forth in this contract;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and intending to be legally bound, it is agreed as follows:

1. GENERAL SCOPE: Subcontractor agrees, for the subcontractor price or prices set forth below, to perform, supply, furnish and pay for all plant and jobsite labor, supervision, administration, material, equipment, drawings, transportation, tools, and other facilities, services, supplies and things necessary and incidental to fully perform and complete all work as hereinafter described, or as may be directed by change order, in strict accordance with the terms and provisions of the Prime Contract and with any and all such agreements or documents (including but not limited to the instruction to bidders, general conditions, special conditions, plans, specifications, addenda and exhibits) made a part of the Prime Contract incorporated therein by reference, attachment, or otherwise; said Prime Contract and all such documents constituting a part thereof being hereby incorporated herein by reference, to the extent applicable to the work to be performed hereunder by Subcontractor.

Subcontractor, as to the performance of this Subcontract, is bound to the Contractor by the terms and requirements of the Prime Contract (to the extent of those pages and sections thereof attached hereto, or identified on Exhibit "A" hereto), and assumes toward Contractor all of the obligations and responsibilities that Contractor thereby assumes toward the Owner.

**EXHIBIT B**

25. **LABOR RELATIONS:** It is hereby expressly understood and agreed by Contractor and Subcontractor that nothing in this Subcontract Agreement shall bind Subcontractor to any union agreements. Contractor agrees that Subcontractor is not responsible for any delays of damages resulting from any work stoppage, picketing, hand-billing or strike if Subcontractor continues to perform in accordance with the terms of this Subcontract Agreement in a timely fashion. If Subcontractor's ability to perform in accordance with the terms of this Subcontract Agreement and/or in a timely fashion is precluded or impaired by an act of Contractor (specifically including but not limited to restricting Subcontractor's access to the Project to other than regular project work hours) Subcontractor shall be relieved of any and all responsibility for any damages or delays resulting from such act by Contractor and Subcontractor shall have full recourse as a result of such act by Contractor. Subcontractor agrees that if a reserved (dual) gate system is established at the Project. Subcontractor will be responsible for insuring that its employees use the gate(s) designated for Subcontractor. If Subcontractor's employees fail to use the gate(s) designated for Subcontractor it shall constitute a material breach of this Subcontract Agreement and Contractor may, at its option, after giving twenty-four (24) hours written notice at Subcontractor's principal place of business, and without prejudice to any other remedy it may have, complete the work of Subcontractor. Such a breach of contract will entitle Contractor to recover money damages from Subcontractor for all losses proximately caused by such breach.

26. **ATTORNEY'S FEES PROVISION:** In the event either party becomes involved in litigation or arbitration in which the services of an attorney or other expert are reasonably required, arising out of this subcontract and the performance thereof, the prevailing party shall be fully compensated for the cost of its participation in such proceeding, including reasonable attorneys' fees incurred in good faith.

27. **COMPLIANCE WITH LICENSE LAW:** In compliance with section 7030 of the Business and Professional Code of the State of California, the following statement is hereby set forth: "Contractor's are required by law to be licensed and regulated by the Contractor's State License Board. Any questions concerning a contractor may be referred to the registrar of the Board, whose address is:
    Contractor's State License Board
    P.O. Box 26000
    Sacramento, CA 95826.

28. **COMPLIANCE WITH HAZCOM REQUIREMENTS:** Subcontractor and Contractor agree that both parties will comply with all provisions of "Prop. 65" and all Hazcom legislation, and that subcontractor, will provide notice, prior to the use, on the Project of any chemicals or compounds listed by the California State Attorney General from time to time under provisions of Prop. 65 advising the general contractor the dates and locations where such items will be used or stored. Contractor agrees to provide to Subcontractor, prior to its use on the project of any chemicals or compounds listed by the California State Attorney General from time to time under provisions of Prop. 65, by delivering clear, written notice in advance informing the Subcontractor of the dates and locations where such items are to be used or stored. The notices required herein shall contained clear descriptions of the type, amount, uses, locations and content of such items as incorporated into or used in connection with the work.

IN WITNESS WHEREOF, the parties have executed this Subcontract Agreement as of the day and year first above stated.

| SUBCONTRACTOR | CONTRACTOR |
|---|---|
| CAPITOL DOOR | SABER CONSTRUCTION INC. |
| By: _[signature]_ | By: _[signature]_ |
| DAVID KARACOSTE / PRESIDENT | Anthony Encinas, President |
| (Name & Title) | |
| Date: 10/20/12 | Date: 9/16/2013 |

Attachments: Exhibits A, B & C     *Revised 11/24/12

Initial ALL Attachments

R/R Entry Doors
00085

## EXHIBIT "A"

SPECIAL PROVISIONS

A. Without limiting any provisions of the Agreement, the Subcontractor agrees to include the following work as noted in Specification Sections:

Division Number and Description

All work to be performed in accordance with plans and specifications included but not limited to the following:

1. Remove the existing doors glass doors and provide /install a new H/C approved automated pair door and 2 single doors with new with railings for each bldg. (North and South)

Exclusions: **Electrical, alarms, permits**

Total Subcontract Price(s) - Lump Sum:   $ 60,000.00
And 00/100 Dollars

Initials:

SABER CONSTRUCTION: _____

SUBCONTRACTOR: _____

DATE: 10/30/13

EXHIBITA

# EXHIBIT "B" - CONTRACT DOCUMENTS

1. CONTRACT PLANS

| SHEET | DESCRIPTION | DATE | NAME |
|---|---|---|---|
|  | N/A |  |  |

2. CONTRACT SPECIFICATIONS
   A. As per local UBC of 2013

3. SPECIAL PROVISIONS: Shop drawing and submittals requirements must be delivered to the contractor

4. PROJECT COMPLETION:
   A.   Project Completion must be completed 10 Calendar days.

Initials:

SABER CONSTRUCTION: AE

SUBCONTRACTOR: _____

DATE: 10/20/13

## EXHIBIT "C"
## INSTRUCTIONS TO SUBCONTRACTORS

I. SUMMARY OF PROVISIONS

A. **General Inclusions:**
General Compliance Provisions required of all subcontractors as detailed in their subcontract:

1. All work as shown on the plans and specifications complete per your subcontract.

2. All permits, connection fees, certifications and inspections to complete your work unless otherwise excluded in the Scope of work in Exhibit A.

3. Work shall conform to all local, state and federal regulatory agencies.

4. Operation and maintenance manuals will be required to be submitted prior to final payment whenever applicable.

5. Warranties per specifications, and as provided by manufacturers, for which ever time is greatest, whenever applicable.

6. Clean-up and **removal** of debris **from jobsite** on a weekly basis, or as required by Saber Construction. If subcontractor fails to clean up their work as required by Saber Construction, and after sufficient written notice, Saber Construction will clean up subcontractor's work and back charge them for all applicable costs.

7. Coordinate installation of hangers with Saber Construction and other subcontractors. Obtain engineer's approval of hangers before proceeding with your work.

8. Install seismic bracing as required per the contract documents and codes if applicable to your work unless otherwise excluded in the Scope of Work.

9. Provide all necessary equipment and hoisting to perform your work unless excluded in Scope of Work as detailed in Exhibit A.

10. Verify installation conditions are correct. Commencing your work constitutes acceptance of existing conditions as satisfactory.

11. Furnish and install traffic control, barricades, and other devices required to protect the general public, other subcontractors and the owner's personnel at all times during your work unless otherwise excluded in Exhibit A.

12. Protect surrounding areas and surfaces to preclude damage from your work.

13. Saber Construction will not provide free telephone service at jobsite. When justified, Saber Construction will install a pay phone for use by subcontractors. Otherwise assume the use of your own cellular phones.

## CONTRACT TERMS AND CONDITIONS

A. Insurance:
A certificate of insurance will be **required prior to work on site**. Please note coverage limits required by Owner. Endorsement for the Owner and Saber Construction as additional insured is mandatory with **No Exceptions**. Saber Construction will not be responsible for delays on site due to a late certificate.

B.   **Payment Terms:**

1. Subcontractor monthly invoices shall be submitted to Saber Construction's main office in Fresno no later than the 25th of each month in order for the invoice amounts to be incorporated into Saber Construction's Pay Estimate Request. Payment request should reflect anticipated progress through the end of the month. Saber Construction's pay estimate request will be submitted to the Owner on or about the 1st of the following month. The contract with Owner stipulates payment within 30 days after submittal and approval of Saber Construction's pay estimate request. Saber Construction will release payment to vendor within 5 calendar days following receipt of payment from Owner.

2. Conditional Lien Releases shall be submitted with each invoice on the attached form for the work accomplished during this billing period.

3. As a condition of the agreement, Subcontractor shall provide the Contractor a list of material suppliers and second tier subcontractors with the value of the material supplied or work performed on the project. Accompanying each monthly draw request, the Subcontractor shall include Unconditional Waivers of Lien from each material supplier/subcontractor for payments made the previous month.

4. Retention may be withheld at 10% on the subcontractor's monthly draws throughout the course of the project.

5. Per the Prime Contract, this project requires payment of Prevailing Wages. Subcontractor shall provide two (2) copies of Certified Payroll. These shall be provided twice a month and must be current. Failure to provide in a timely manner **will result in delay of payment**.


C.   **Safety Requirements:**

1. Subcontractor shall abide by Saber Construction's safety requirements which are available for review.

2. Hard-hats and eye protection will be mandatory for all site personnel. Tennis shoes/sneakers are not allowed on site.

3. Subcontractor shall provide a written job-specific safety plan prior to any on-site work.

4. Subcontractor's employees shall attend Saber Construction's weekly safety meetings. Subcontractor may hold his own safety meeting in lieu of attending Saber Constructions with meeting notes from each meeting submitted to Saber Construction for review and filing.


D.   **Jobsite Project Rules:**

1. Subcontractor will be required to report to the Field superintendent and/or Owner's representative prior to the start of each work activity and upon completion each day. Reporting includes labor force head-count on site.

2. Subcontractor must at all times maintain proper decorum and refrain from any unnecessary noise that is not associated with the performance of their work.

2

3. Subcontractor will work the same hours as Saber Construction: hours to be determined, and will be based on a typical 40-hour workweek.
   a) If Subcontractor needs to work different hours than Saber Construction's stated hours, it will require prior approval by Saber Construction.
   b) Saber Construction must be on site when a Subcontractor is working.

E.  Project Quality Requirements:

1. The minimum requirements are:
   a) Adherence to specifications included with this bid package.
   b) No project substitution will be allowed that varies from approved and submittal unless substitution is approved by Architect or engineer

F.  Other Concerns and Requirements:

1. Shop Drawings and Submittals:
   When applicable, subcontractor is responsible for submitting shop drawings and product submittals in a timely manner, so as not to delay the project. Subcontractor shall supply sufficient drawings and submittals to satisfy the Owner's requirements. Subcontractor shall allow, at a minimum, two (2) weeks for Owner review of submitted information.

2. Material Deliveries and Work Schedule:
   Subcontractor shall deliver material, perform, and complete this work per the Contractor's schedule. Subcontractor shall make final coordination for material deliveries and work schedule with Saber Construction's Office @ 559 / 392-3355 or Fax 559 / 399-3045. Subcontractor shall have a representative on site to accept all deliveries.

3. The Subcontractor shall not assign to the work any Project Manager or Superintendent to whom the Owner or the Contractor makes reasonable objection. The Subcontractor shall make no substitution for any Project Manager or Superintendent previously assigned, if the Owner and Contractor make a reasonable objection to such substitution. The Subcontractor shall not remove the Project Manager or Superintendent from the work prior to final completion of the work without agreement with the Owner and/or the Contractor.

4. As-Builts, Operation and Maintenance Manuals:
   Provide as-built drawing showing location and depth of utilities. Use property lines or building gridlines for dimensioning horizontal locations of utilities. Furnish operation and maintenance manuals in quantities requested by the Owner. The superintendent will review as-built drawings each month. Failure to keep as-builts current **will result in delays of monthly pay requests**.

G. Contract Exhibits:

1. Exhibit "A", Special Provisions
2. Exhibit "B", Contract Documents
3. Exhibit "C", Summary Provisions

Initials:

___AE___ SABER CONSTRUCTION: _____

___DW___ SUBCONTRACTOR: _____

10/20/13 DATE: 11/21/13